MATTHEWS vs. EVERITT and others.

1. A mortgagee who knows that a prior encumbrance exists, or a concurrent legal encumbrance entitled to be a prior lien, will not be permitted by his act of registry to gain priority over the other for want of registry.

2. The statutes regulating the registry of deeds are statutes of notice. They are to prevent frauds and wrongful priorities, and not to encourage or to shield them.

Argued before the Vice-Chancellor, upon bill, answer, and proofs.

*Mr. A. V. Van Fleet,* for complainant.

*Mr. Kingman,* for defendants.

THE VICE-CHANCELLOR.

This is a foreclosure suit, and the matter disputed in it is the order of priorities between the three mortgages mentioned in the bill.

Alfred Everitt, the mortgagor, bought two tracts of land at a sale by commissioners to divide the real estate of Benjamin Blackwell, deceased, situate in the county of Hunterdon. In completing his purchase and taking his deed, he gave the three mortgages in controversy: One for $3318, to the commissioners, to secure to the widow the interest of her third during her life, and afterwards the principal to the heirs; another for $3500, to Solomon Holcomb, one of the commissioners, since dead; and the remaining one for $1400, to Isaac Matthews, the complainant. The mortgage

to the commissioners and the mortgage to Holcomb were both dated, executed, and acknowledged on the 2d of April, 1869. The mortgage to Matthews was dated, executed, and acknowledged on the 5th of the same month, and was duly recorded the same day. The other two mortgages were not recorded till the day after, and Matthews relies upon his priority of registry to maintain his priority of lien. He claims that his mortgage was the first one delivered, and the first one recorded.

The defendants who hold the other two mortgages deny his priority, and insist by their answer that their mortgages were executed and delivered prior to Matthews'; that he took his with notice of theirs, and that his lien should therefore be postponed.

The sale by the commissioners was on the 24th of November, 1869. The conditions of sale were in writing, and were particular and explicit. Everitt purchased two several tracts, signed acknowledgments of purchase in recognition of the conditions, and Matthews signed with him as surety for Everitt's performance. One of the tracts purchased contained eighty-two acres, and brought $10,277.50; the other tract contained thirty acres, and brought $1977.44. The conditions required that a mortgage should be given by the purchaser on the larger tract, for one-third of the proceeds of the whole real estate sold, deducting an old mortgage then on it. The mortgage for one-third was to secure the widow's dower, and the conditions so declared. The deed from the commissioners was to be delivered on the 31st of the following March, at the office of Nelson V. Young, in Mount Airy, who drew the conditions of sale and the acknowledgments of purchase, and acted as the scrivener of the commissioners. The amount of the widow's third was $3318. The deed to Everitt was dated, executed, and acknowledged on the 27th of March, 1869, and was left with Young, who drew it and took the acknowledgment. Everitt had difficulty in raising all the purchase money, and in addition to the $3318, above mentioned, arranged with one of the commissioners, Solomon

Holcomb, for $3500, by giving him a mortgage for that sum, which was allowed as so much of the purchase money. I think the latter fact is to be taken as sufficiently proved for the purposes of this case. Both these mortgages were dated, executed, and acknowledged, as before stated, on Friday, the 2d of April, and left with Young, who was acting for the commissioners and for Holcomb. The deed and mortgages were left with Young, pending the completion by Everitt of the terms of his purchases. As surety for such completion, Matthews was at the same time communicating with Everitt and with Holcomb in regard to the business, and on the evening of Sunday, the 4th, saw Young and told him of a conversation with Holcomb, who had scolded because the money wasn't all paid, and that he looked to him, Matthews, to fetch up what was behind on the sale. Matthews also told Young that Everitt had come short, and that he, Matthews, would have to make up about $1400; that he had concluded to take a mortgage from Everitt for that amount, and that if Young could have it ready early in the morning he would take it right to Flemington, and that if he got started early it would plague them to get ahead of him.

Holcomb had arranged with Matthews for the making up by the latter of the requisite balance, for which Matthews was to give his note. He had also given instructions to Young as to taking this note from Matthews before delivering the deed. Matthews had been at Everitt's house that Sunday afternoon, and had arranged with Everitt to take from him the mortgage for $1400. Early on Monday morning Matthews gave Young the note, who then took the deed to Everitt's house, and delivered it upon the latter's execution of the mortgage. Matthews took his mortgage, drove at once to Flemington, and lodged it for record. The same day, or the next, Young handed over to his principals the other two mortgages, which were duly recorded on the 6th. As between the two mortgages of the defendants, the priority is agreed by their holders to belong to that of the commissioners. The only question is, can Matthews hold his

priority to both, or to either? My opinion is clear that he cannot, and that his mortgage should be decreed to be subsequent to each of the others.

It is not necessary to hold, in order to this decree, that the delivery of the defendants' mortgages was prior to the delivery of the complainant's. The most favorable view for the complainant in regard to delivery of which the evidence admits, is the view that the three mortgages were delivered, in a legal sense, simultaneously with the delivery of the deed. In respect to this, Young was the agent of the commissioners and of Holcomb, and as to this point delivery to him was delivery to them. There will be no difference of rule or principle in determining priorities, whether this view be taken or the view that the two mortgages were delivered first. The disposition to be made of the priorities in such a case as this will not turn upon technical legal doctrines, but upon the solid grounds of good faith and fair dealing. There is nothing in the complainant's course in this business to make him strong in a court of equity. The statutes regulating the registry of deeds are statutes of notice. They are to prevent frauds and wrongful priorities, and not to encourage or to shield them. The reason why a subsequent encumbrancer, who knows or ought to know that a prior encumbrance exists, or a concurrent legal encumbrance entitled to be a prior lien, will not be permitted by his act of registry to go ahead of the other for want of registry, is that it would be a fraud, an unfair transaction as between honest men to permit him to get such a precedence. It is the object of the law of registry to promote good faith, and applying this test of good or bad faith, I have no doubt as to the decision I have come to. I am satisfied from the evidence that the complainant perfectly well knew, before his mortgage was drawn, that the other two mortgages were executed, and only dependent for delivery on the delivery of the deed; that they were meant to be and were the basis to the extent of their amount on which the title was to pass and the transaction to stand; that they were to be part of and essential

to the completion of the purchase, for which completion he was bound as security, and which he had no right to circumvent; that standing in the relation he did to the commissioners and to Holcomb, with knowledge of their arrangements, and they without knowledge or suspicion of his, the scheme he planned and executed to protect himself at their expense, was a fraud upon their rights.

The evidence and legal presumptions in the case abundantly establish, in my judgment, the character of the transaction as I have given it above. The testimony of Israel Fisher, a brother-in-law of the complainant, in regard to a conversation with Holcomb a few days after these mortgages were given, is not sufficient to control or affect the inherent equities of the case. Holcomb is dead, and cannot give his version of what was then said; but admitting that the lapse of time and the relationship of the witness have in no degree varied his recollection of the precise details of the talk, I see nothing in his evidence to influence my opinion as to the decree that ought to be made. The mortgage to the commissioners is the first lien, that to Holcomb the second, and that to Matthews the third.

I advise as above.